UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MANDOT CONSTRUCTION, L.LC., PAUL MANDOT, AND ANGELICA MANDOT | CIVIL ACTION<br><br>NO. 04-3057 |
| VERSUS | SECTION "T"(5) |
| ST. TAMMANY PARISH, ET AL | |

Before the Court is a Motion for Summary Judgment [Doc. 20], filed on behalf of the Defendants, St. Tammany Parish, Kevin Davis, Joe Thomas, and Emile Lombard. This matter was submitted for the Court's consideration, without oral argument, on February 15, 2006. The Court, having reviewed the arguments of counsel, the Court record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

## ORDER AND REASONS

### I. SUMMARY OF THE FACTS

The Plaintiff, Mrs. Mandot, sought to develop lots situated in the section of the Highland Park Subdivision that is located south of Lopez Street. This section of the Highland Park Subdivision is in unincorporated St. Tammany Parish and was previously undeveloped wooded land that abuts the boundary line of Windsor Place Subdivision and the corporate limits of the City of Slidell.

In May 2002, in connection with this development, Mrs. Mandot obtained approval to enter the unopened parish right of ways, including Bridge, Arbor and Plum Streets, from the Planning Commission of St. Tammany Parish. The Planning Commission gave its approval by passing Resolution 02-056. With this approval, Mrs. Mandot was also required to obtain the approval of the City of Slidell for the drainage plan because the proposed drainage would impact the City's drainage infrastructure. The initial approval and a separate permit from the Department of Planning also allowed Mr. Mandot to clear trees from the land. Prior to the clearing of these trees, a 15-foot buffer zone had been established along the southern boundary of Highland Park, which abuts Windsor Place and the Slidell city limits. This buffer zone was in writing and made known to Mrs. Mandot.

In developing the property, Mrs. Mandot violated the established buffer zone causing serious drainage problems for area residents. Following her violation of the buffer zone, impacted residents testified before the Planning Commission, a Cease & Deist was issued by the Parish and criminal charges were brought against Mrs. Mandot, for which she was later convicted. Additionally, the City of Slidell never approved Mrs. Mandot's drainage plan.

## II.    BACKGROUND

On April 9, 2002, Mrs. Mandot testified before the Commission about the development of her property stating that "[t]here is a large canal that runs to the back end of that property that drains through Fritchie Park." This canal is located within the City Limits of Slidell. The Parish Engineer, Mr. Thibodeaux, advised the Commission that it would be best to get drainage

information before approving the application to enter the right of way.  Therefore, the Commission tabled the issue for a month to allow Mr. Thibodeaux to survey the property and present a drainage proposal.  Following this meeting, Mr. Thibodeaux met with Mrs. Mandot and it was determined that because some of the water from the site would have to drain into the City of Slidell, it would be necessary to obtain a letter from the City acknowledging and approving this drainage plan.

At a May 14, 2002 hearing before the Planning Commission, Mrs. Mandot admitted that she was aware that the drainage of this property would have an impact on the surrounding areas, including Slidell.  Mr. Thibodeaux recommended that the Commission give Mrs. Mandot permission to enter the parish right of way in order to clear trees, so that a drainage plan could be submitted.  However, the engineering department would not issue a work order until the drainage plan was approved by Mr. Thibodeaux and the City of Slidell.  Thereafter, permission was given in two parts: (1) permission to enter the right of way to clear trees (requiring a separate administrative permit application) and formulate a drainage plan; (2) permission to enter the right of way to construct streets, which required compliance with all requirements before the engineering department could issue the standard work order.  Resolution 02-056 was adopted on May 14, 2002 and was set to expire 6 months later on November 14, 2002, unless Mrs. Mandot complied with all the requirements, including providing proof that the drainage plan had been approved by the parish engineer and approved in writing by the City of Slidell.

After Mrs. Mandot violated the buffer zone and cleared trees, Hurricane Lili struck,

prompting the United States Army Corps of Engineers ("Corps" or "USACE") to issue a verbal Cease & Deist to Mrs. Mandot at the end of October, 2002.  Mr. Thibodeaux informed Mrs. Mandot that the clearing of the trees had adversely affected the sheet flow drainage, resulting in drainage problems to the adjacent properly and so, no further work orders would be issued until the drainage was restored to "prior clearing" conditions.

On November 7, 2002, the Parish of St. Tammany issued a summons to Mrs. Mandot.  In a letter dated November 6, 2002, Mrs. Mandot stated that there was no buffer zone on the southern boundary and she attached a copy of the initial survey with a buffer drawn in on the western boundary.  On November 7, 2002, Mr. Thibodeaux responded to this letter stating that "the map you are now furnishing showing the '15' buffer zone' in script was never labeled in any previous correspondence."  Subsequently, Mrs. Mandot was convicted for violating this buffer zone.

After the resolution had expired, Mr. Burkes, Plaintiff's project engineer, responded to Mr. Thibodeaux's letter stating that "...your concerns regarding immediate drainage relief for the adjacent property owners in Windsor Place, the southern portion of this Highland Park S/D is located within wetlands.  No work can be completed unless a wetland permit is in place.  The Defendants contend that at this point, Mrs. Mandot could not have met the requirement of having a Corps permit to construct streets, and additionally still needed the City of Slidell's approval. The latest proposed drainage plan also required work to be done in the city limits necessitating an actual permit from the City of Slidell.

In her Complaint, Mrs. Mandot alleges that Defendants, Joe Thomas ("Thomas"), a St. Tammany Parish Councilman, and Emile Lombard ("Lombard"), Chairman of the St. Tammany Parish Planning Commission, did not want her to develop the property and thus, they required her to undergo additional requirements for her permit. Mrs. Mandot claims that the additional condition required her to obtain the approval from the City of Slidell and that these Defendants knew that the City of Slidell would refuse to involve itself in this matter. She also claims that the Defendants required Slidell's approval for the sole purpose of delaying development past the expiration of Resolution 02-056 in November of 2002.

Defendants, however, point out that the Resolution expired before the City changed its position with her regard to her development of the property. Additionally, Mrs. Mandot stated at the May 14, 2002 Commission meeting that the City's approval would be necessary because the drainage plan would impact the City. Mrs. Mandot also violated the buffer zone of the southern boundary right before the resolution was due to expire, which resulted in serious drainage and flooding problems for area residents in Slidell, a Parish and USACE Cease & Desist Orders, and Mrs. Mandot's conviction.

Mr. Thibodeaux attested that by the April 8, 2003 public hearing before th Planning Commission (to determine whether the Resolution should be renewed), "no restoration work had been performed at the site to restore the area to its pre-clearing condition and relieve the adverse impacts of the drainage on surrounding property caused by the clearing operation having altered the sheet flow." Further, Mr. Thibodeaux stated that "although the City of Slidell had decided

5

not to review and approve the latest drainage plan, the USACE had not lifted its Cease & Desist order and had not issued a permit, which would be required before any work order could be issued by my department and any work performed at the site." Several residents also appeared at the meeting and offered testimony about their drainage and flooding related problems since the clearing activity, their concerns about the use of individual septic tanks and other concerns.

Therefore, the Defendants claim that the Commission's denial of Mrs. Mandot's application for a new resolution, to construct streets, resulted from her conduct in clearing the property, rutting up the wetland, in the face of Hurricane Lili. Plaintiff argues that the application was denied because Parish arbitrarily imposed the City of Slidell's approval of the drainage plan as a requirement to the Parish's approval of her application. However, the Parish claims it based its denial of Mrs. Mandot's application on the fact that she failed to meet all the requirements, including but not limited to the City's approval, prior to the expiration of the Resolution and during the process of seeking the new resolution to construct the streets. In other words, the City's approval was not the only requirement because Mrs. Mandot also needed a permit from the Corps to proceed as wetlands were involved. On January 8, 2003, Mr. James Little of the USACE issued a memo stating that "the application is complete [and] the proposed work in not eligible for authorization under the provisions of the Programmatic General Permit."

After denying Mrs. Mandot application for a new resolution on April 8, 2003, Mrs. Mandot appealed this decision. On May 1, 2003, the Governing Body of St. Tammany Parish, the fourteen member Parish Counsel adopted legislation (Ordinance C.S. No. 03-0679) imposing

6

a moratorium on the issuance of building permits in all of the Highland Park Subdivision. This legislation was extended for six months on May 28, 2003.

Mrs. Mandot's appeal was heard on June 5, 2003 at a regularly scheduled meeting of the Council, where impacted residents testified about ongoing drainage and flooding problems caused by Mrs. Mandot's clearing of the trees. The Council, then, voted 11 to 3 to concur in the Planning Commission's denial of the new resolution. The moratorium and the denial of the new resolution were a result of the ongoing drainage/flooding problems, and the continuing Cease & Desist Order of the Corps, which were both a result of Mrs. Mandot conduct in clearing the property and violating the buffer zone. At the June 5, 2003 meeting, the Council also vacated the moratorium for the portion of the Highland Park Subdivision north of Lopez Street because this part of the subdivision contained sufficient drainage infrastructure and does not need to be included within the moratorium.

Mrs. Mandot claims that the moratorium was lifted on this portion of the property at the request of Mr. Lombard, who resides in this area. However, at the time the moratorium was lifted, Mr. Lombard and his son's residences had been completely built and there was already drainage infrastructure in place.

### III.    LAW ON MOTIONS FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56©)).  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  Stults v. Conoco, Inc., 76 F.3d 651, 655-56 (5th Cir. 1996) (citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 912-13 (5th Cir.) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)), *cert. denied*, 506 U.S. 832 (1992)).  When the moving party has carried its burden under Rule 5(C), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis supplied); Tubacex, Inc. v. M/V RISAN, 45 F.3d 951, 954 (5th Cir. 1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."  Matsushita Elec. Indus. Co., 475 U.S. at 588.  Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**IV.   COURT'S ANALYSIS**

The Plaintiff alleges that the Parish of St. Tammany and the other named local government officials violated her substantive due process rights under the 4th and 14th amendments by selective enforcement and her equal protection rights under the 14th amendment

of the United States Constitution. She also claims the Defendants were, at all times, acting under color of state law and thus, they are liable under 42 U.S.C. § 1983. Mrs. Mandot also claims that the Defendants are liable for intentional infliction of emotional distress, negligent infliction of emotional distress, and tortious inference with the right to develop property.

The Court finds that there are no genuine issues of material fact in this case. Therefore, the Court must now determine whether, based on these undisputed facts, the Defendants are entitled to a judgment as a matter of law.

In Bryan v. City of Madison, the Fifth Circuit held that in order to establish either a substantive or a procedural due process violation by claiming denial of a property right, the Plaintiff must first prove the denial of a constitutionally protected property right. 213 F.3d 267, 274 (5th Cir. 2000). Proof of a property right must be made by reference to state law. Schaper v. City of Huntsville, 813 F.2d 709 (5th Cir. 1987). In this case, Mrs. Mandot claims that she has a property right under Louisiana law to develop her property. The Resolution passed by the Planning Commission granted Mrs. Mandot the right to enter several unopened parish right of ways for the purpose of gaining access to property. The Resolution was subject to several conditions, including receiving the written approval of the drainage plan from the City of Slidell. Because Mrs. Mandot failed to comply with the requirements of the Resolution and caused damage to adjacent property owners, the Commission denied to application to renew the resolution. Therefore, Mrs. Mandot did not have a property interest to these unopened parish right of ways because she failed to comply with the requirements set forth by the Resolution and

thus, she does not have a procedural or substantive due process claim.

Additionally, the Planning Commission acted under the authority and discretion granted to it by Parish Ordinance and Louisiana state law. St. Tammany Parish Ordinance, SEC. 20-011.01, entitled Procedure and Standards for Granting Permission to Enter Parish Right of Way for Gaining Access to Property, stated:

> The Parish Engineer must review and approve a road design and drainage plan prepared by a licensed Louisiana state registered engineer. The Parish Engineer may require additional off-site work to minimize the potential impact of the proposed construction with special emphasis regrading drainage. The road and drainage design must meet the road standards as established under Subdivision Regulatory Ordinance No. 499.

Further, Louisiana Revised Statute 33:119, entitled Coordination with Parish Planning, states:

> In any parish where there exist separate parish and municipal planning commissions, every municipal planning commission shall consult and co-operate with the parish planning commission for the purpose of guiding and accomplishing a co-ordinated, adjusted, and harmonious development of the parish, of zoning districts and of public improvements and utilities and of subdivisions which do not begin and terminated within the boundaries of a single municipality.

Under these provisions, the Planning Commission acted appropriately in requiring Mrs. Mandot to have the draining plan reviewed by the Parish Engineer and in additionally, requiring her to receive the approval of the City of Slidell, which would be impacted by the drainage plan.

While Mrs. Mandot alleges that she has a property right to develop her property and a fundamental right to receive procedural and substantive due process under Louisiana law, land use is subject to the police powers of St. Tammany Parish. The Louisiana Supreme Court has

noted that land use is subject to the police power of various governing bodies, and the courts will not interfere with the decisions of those bodies unless it is plain that their action is without any relation to the public health, safety or general welfare.  Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La. 1975).  See also Bourbon Country Estates, Inc., et al. v. St. James Parish, 611 So.2d 180, 182 (La. App 5 Cir. 1992).  Further, the burden of proof is on the plaintiff to establish that the authority acted arbitrarily.  Bourbon, 611 So.2d at 182.

       The Court does not find that St. Tammany Parish acted arbitrarily in subjecting Plaintiff to certain conditions in developing the property or in denying Plaintiff's application to renew the Resolution.  In fact, the Court finds that the Planning Commission was acting under its police power to protect the property of surrounding landowners.  Requiring that Mrs. Mandot drainage plan be approved by the Parish Engineer and the City of Slidell was well within the Parish's police power and also mandated by St. Tammany Parish Ordinance, SEC. 20-011.01.  Therefore, under Louisiana law, the Court does not find that the Plaintiff's due process rights were violated.

       Mrs. Mandot also claims that her equal protection rights have been violated and that these regulations were selectively enforced and procedural hurdles created  based on her sex.  Because the Court finds that there is no evidence or substantiated allegation that Mrs. Mandot was discriminated against on the basis of her sex, the Court analyzes her equal protection claim by looking to see whether she was treated differently from others similarly situated (i.e. other

11

developers).

As a prerequisite to an equal protection claim, a plaintiff must prove that similarly situated individuals were treated differently. Beeler v. Rounsavall, 328 F.3d 813, 816 (5th Cir. 2003) (citing Wheeler v. Miller, 168 F.3d 241, 252 (5th Cir. 1999). Land use classifications have a rational basis if they are rationally related to a legitimate government interest. Jackson Court Condominiums, Inc. v. City of New Orleans, 874 F.2d 1070, 1079 (5th Cir. 1989).

The Court finds that these claims have no merit or support in the facts. Mrs. Mandot makes this allegation in her Complaint, but at no point produced any evidence that the governing bodies of the Parish or the named individuals discriminated against her in requiring her obtain the approval of the City of Slidell or to have the drainage plan approved by the Parish Engineer. These are legitimate requirements set forth by Parish Ordinance and Louisiana state law. Even if Mrs. Mandot had produced evidence that she was treated differently than others similarly situated, the Parish has a legitimate government interest in protecting the adjacent property owners from flooding, which was rationally related to the Parish's requirement that Mrs. Mandot receive approval of her drainage plan by the City of Slidell and the Parish Engineer.[1]  Therefore,

---

[1] Similarly, in Unique Properties, L.L.C. v, Terrebonne Parish Consolidated Government, a Regional Planning Commission denied plaintiffs' request for waiver of engineering, in connection with their proposal to subdivide a tract of land. The Fifth Circuit held that Planning Commission did not violated their equal protection rights because the Plaintiffs were not similarly situated to other applicants, and drainage and street flooding issues were the basis for denying their request, which was related to a legitimate government interest. 2005 U.S. App. LEXIS 21507 (5th Cir. Oct. 4, 2005).

the Court finds that Mrs. Mandot's equal protection and selective enforcement claims must fail.

In her Complaint, Mrs. Mandot also makes allegations that in or about 1996 Defendant, Joe Thomas, "implied" that he would allow her to place video poker machines in his establishment "upon her providing him with sexual favors." Mrs. Mandot claims that when she refused him, Mr. Thomas required her to remove the machines from his bar. However, at the time of these alleged facts, Mr. Thomas was not the owner of the bar. In 1993, three years before this alleged conduct, Mr. Thomas transferred ownership of this bar. Additionally, there are no allegations that Mr. Thomas' alleged actions related to his capacity as a Police Juror or a Councilman.

Mrs. Mandot also alleges that in 1999, she met with Defendant, Emile Lombard, at her home in connection with the development of her property. She claims that Mr. Lombard indicated that he would "soon be coming into an important position" and that if she transferred ownership of some of her undeveloped land to him, then he would "see to it that things ran smoothly." Mrs. Mandot claims that she refused Mr. Lombard's request. However, Mr. Lombard was not even at the meeting when the Resolution was initially approved. Further, Mr. Lombard was not even a planning commissioner at the time Mr. Lombard allegedly made these statements.

Additionally, Mrs. Mandot makes allegations that Mr. Thomas and Mr. Lombard "did not wish for plaintiffs to develop the property" and "decided to require [her] to undergo additional

requirements for her permit, namely, to obtain approval from the City of Slidell." She claims that the Defendants "knew that the City of Slidell would decline to become involved in the matter." She claims that "Emile Lombard and The Parish Planning Commission" denied her request to renew the resolution and that she appealed the denial to the City Council "whereupon Joe 'Coach' Thomas and the City Council denied the appeal." Despite the fact the Commission consists has 11 members and the City Council has 14 members, Mrs. Mandot accuses Mr. Thomas and Mr. Lombard of directly acting to deny her renewal and her appeal and of imposing the moratorium.

The Court finds that Mrs. Mandot has made no substantial or supported allegations against Mr. Lombard, Mr. Thomas, or Mr. Davis. Mrs. Mandot's allegation that Mr. Lombard tried to get her to transfer property to him in exchange for his assistance as government official, even if supported, fails because Mr. Lombard was not an official at the time of alleged statements. Similarly, Mr. Thomas was not owner of the bar at the time, Mrs. Mandot alleges he requested sexual favors from her. Therefore, Mr. Thomas did not the authority to decide whether the poker machines remained on the property. Finally, the Court finds that all of the Plaintiff's allegations directed against the individual defendants are unsupported, undocumented and irrelevant to her claims that the her due process and equal protection rights have been violated.

Finally, Mrs. Mandot also makes claims for intentional and negligent infliction of

emotional distress, as well as tortious interference with the right to develop property.  First of all, the Court notes that under Louisiana law, there is no cause of action for tortious interference with the right to develop property and thus, this Court need not address this claim any further.

Under Louisiana, in order to prove intentional infliction of emotional distress, the Plaintiff must prove (1) that the emotional distress suffered by the plaintiff was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.  White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991).  Additionally, Louisiana does not generally recognize an independent cause of action for negligent infliction of emotional distress.  Moresi v. Department of Wildlife, 567 So.2d 1081 (La. 1990).  The cause is available under limited circumstances only.  Bacas v. Falgoust, 99-1312 (La. App. 5 Cir. 5/30/00), 760 So.2d 1279.  A Plaintiff may recover for unintentional or negligent infliction of emotional distress unaccompanied by physical injury where the defendant's negligent conduct is deemed outrageous.  Succession of Harvey v. Dietzen, 1997-2815 (La. App. 4 Cir. 6/24/98), 716 So.2d 911, 916.  In order to recover, the plaintiff must show the existence of an "especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious."  Moresi, 567 So.2d at 1096.

The Court does not find that Mrs Mandot has alleged any facts or even made any

15

unsupported allegations of conduct by the Defendants that rises to the level of "extreme and outrageous." Mrs. Mandot states in her Complaint that Mr. Thomas "implied" that "upon providing him with sexual favors," he would allow her place the poker machines in his establishment. A mere implication or offhand comment, without even any express statement, direct solicitation or actual conduct certainly cannot be said to extreme and outrageous. Further, Mr. Lombard allegedly told Mrs. Mandot that he would "soon be coming into an important position" and he would "see that things ran smoothly," if she transferred property to him. While the Court recognizes that if this factual allegation is true, Mr. Lombard conduct may be considered improper, the Court cannot say it was extreme and outrageous. These are the only allegation of specific conduct that Mrs. Mandot makes in her Complaint about Mr. Lombard and Mr. Thomas. She goes to make vague and non-fact based allegations. For example, she claims that Mr. Lombard and Mr. Thomas did not wish for the plaintiffs develop the property and that they tried to delay the development. Not only is this type of alleged conduct not extreme and outrageous, their mere alleged desire, wish or hope for the Plaintiff to not develop the property is not actionable nor it is illegal, unless there was some actual conduct or specific act that resulted from these feelings. As noted several times, Mrs. Mandot has not alleged such conduct and thus, she has no legal claim against these defendants.

**V.     CONCLUSION**

The Court finds that there are no genuine issues of material fact and thus, the Defendants

are entitled to judgment as a matter of law with respect to all of Plaintiff's claims.  Therefore, the only claims remaining for trial in this matter arise from the Defendants counterclaim against the Plaintiff.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment, filed on behalf of St. Tammany Parish, Joe Thomas, Emile Lombard, and Kevin Davis, be and the same is hereby **GRANTED.**

New Orleans, Louisiana, this 9th day of May, 2006.

_____
UNITED STATES DISTRICT JUDGE
G. THOMAS PORTEOUS, JR.

17